UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STEPHEN L. BRAGA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 12-0139 (JEB) |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, the Federal Bureau of Investigation ("FBI"), respectfully moves for summary judgment in this case, which arises under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").  Plaintiff, a criminal defense attorney, seeks investigative records from a criminal prosecution of his client by the State of Arkansas, in which the FBI assisted.  The FBI processed 697 pages of information and released 458 pages to Plaintiff, withholding information on the basis of Exemptions 6, 7(C) and 7(D).  Specifically, FBI withheld only identifying and personal information of third parties, law enforcement officials, and confidential sources.

As explained in the attached Memorandum of Law and the FBI's supporting coded *Vaughn* declaration, there are no genuine disputes of material fact and the agency is entitled to judgment as a matter of law.

July 19, 2012

Respectfully submitted,

RONALD C. MACHEN JR., D.C. Bar #447889
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092
Acting Civil Chief

By:  __/s/_____
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204, alan.burch@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| STEPHEN L. BRAGA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 12-0139 (JEB) |
| ) | |
| FEDERAL BUREAU OF INVESTIGATION, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Defendant, the Federal Bureau of Investigation ("FBI"), respectfully moves for summary

judgment in this case, which arises under the Freedom of Information Act, 5 U.S.C. § 552

("FOIA").  Plaintiff, a criminal defense attorney, seeks investigative records from a criminal

prosecution of his client.  As the FBI's *Vaughn* declaration explains, the agency responded

appropriately to Plaintiff's four FOIA requests by searching thoroughly for responsive records

and releasing all non-exempt, reasonably segregable information.  There are no genuine disputes

of material fact and the FBI is, therefore, entitled to judgment as a matter of law.

## Background

The underlying criminal prosecution was lead by state prosecutors in West Memphis,

Arkansas, and assisted by the FBI.  The case involved the grisly 1993 murders of three young

boys.  The prosecution obtained convictions of three teenagers (widely known as the "West

Memphis Three"), two of whom were sentenced to life imprisonment and the third, Damien

Echols, to death.  Plaintiff here represents Echols.  In 2010, the Arkansas Supreme Court ordered

a hearing to evaluate new forensic evidence under the state's DNA testing statutes.  *See Echols v.*

*State*, 2010 Ark. 417, --- S.W.3d ----, 2010 WL 4353535 (Nov. 4, 2010).  Thereafter, the state

reached an agreement with the three defendants to accept *Alford* pleas from them and they were

resentenced to time served, which was over 18 years.  The three were released.  *See* "Deal Frees

'West Memphis Three' in Arkansas," New York Times (Aug. 19, 2011).

Plaintiff filed four successive FOIA requests with the FBI all seeking records relating to

the FBI's involvement in the investigation.  The first was the broadest and sought:

> copies of all records relating to the FBI's involvement with the West Memphis Police
> Department in West Memphis, Arkansas in an investigation into the murders of three
> young boys named Steven Branch, Michael Moore and Christopher Byers on May 5,
> 1993.

Complaint ¶ 13; Declaration of David M. Hardy, attached hereto, ¶ 6.  The FBI responded by

releasing 190 pages of information it had previously released in response to a prior FOIA request

by someone else, explaining that the agency would agree to re-process Plaintiff's request under

new guidelines from the Attorney General if Plaintiff resubmitted his request.  Hardy Dec. ¶ 7.

Plaintiff did so, submitting a second request that asked for the 190 pages to be reprocessed.  *Id*.

¶ 11.  Plaintiff also submitted two additional FOIA requests which sought more particularly

defined records relating to the FBI's work in the West Memphis Three case.  *Id*. ¶¶ 16 & 22.

The FBI processed a total of 748 pages responsive to Plaintiff's requests (including the

190 pages that it had previously processed in responding to an earlier request).  *Id*. ¶ 4.  The FBI

has released to plaintiff a total of 484 pages in full or in part, by letters dated  June 6, 2011 and

October 31, 2011.  *Id*.   The FBI based its withholdings on FOIA Exemptions 6, 7(C), and 7(D).

*Id*.

4

## Legal Standards for Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation: "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248.  In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party (here, Plaintiff).  *E.g., Sample v. Bureau of Prisons*, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

In FOIA cases, the agency bears the ultimate burden of proof.  5 U.S.C. § 552(a)(4)(B).  Thus, to obtain summary judgment, the agency must present sufficient evidence to sustain its position on all essential elements, specifically that the information in each agency record responsive to plaintiff's FOIA request has been produced, is unidentifiable, or is exempt from disclosure.  *See, e.g., Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Burka v. U.S. Dep't of Health and Human Services*, 87 F.3d 508, 514 (D.C. Cir. 1996) (exemptions); *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (adequacy of search); *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (both).

An agency satisfies the summary judgment requirements regarding its search and application of Exemptions generally by providing the Court and the Plaintiff with declarations, affidavits, or other documentary evidence.  *See, e.g., Larsen v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009).  Generally, an agency may use a *Vaughn* index to list its withheld records or portions thereof, and the factual bases for each withholding, in support of its motion for

summary judgment.  *See generally Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).  In this context, the agency is entitled to a presumption of good faith and that it acted in conformity with its legal obligations.  *Id*.  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id*.

Once the moving party (here, FBI) has met its burden in its summary judgment motion, the non-movant (here, Plaintiff) may not rest on mere allegations to survive summary judgment, but must either: (1) proffer specific evidence showing that a genuine dispute of fact exists for trial, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986), or (2) "point[] out to the district court that there is an absence of evidence" on an essential element of the agency's case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Pertinent here, the courts frequently permit the use of a "coded" *Vaughn* declaration when the agency has made numerous exemption claims that fall into repeated categories, and the factual bases for each category is substantially similar or the same.  *See, e.g., Bonner v. United States Department of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991).  FBI used a coded *Vaughn* declaration here (*i.e.*, the Hardy Declaration) to which the FBI attached each page of responsive material from which the FBI redacted information that is exempt from disclosure under FOIA. Next to each redaction is the code indicating which factual category is represented by the particular withholding and pages that were withheld in full are represented by a sheet of paper listing the Bates number and exemption(s) relied upon to withhold the page.  *See generally* Hardy Decl. ¶ 43 and accompanying chart.

## Argument

**I.      FBI Conducted an Adequate Search.**

In responding to a FOIA request, an agency must conduct a reasonable search for responsive records. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Weisberg v. U.S. Dept. of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983). "The search for records need not be exhaustive, *see Oglesby*, . . . but the scope and methodology of the search must be 'reasonably calculated to uncover all relevant documents.'" *McKinley v. FDIC*, --- F. Supp. 2d ---, 2011 WL 3443941 (D.D.C. 2011) (citing *Weisberg*). "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citing *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)). In addition, "adequacy is measured by the reasonableness of the effort *in light of the specific request*." *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009) (emphasis added).

Here, the FBI conducted a reasonable and adequate search. First, its declaration explains what kinds of potentially responsive information it maintains and the nature of the systems that house that information. (Hardy Decl. ¶¶ 27-33.) In deciding where to look for potentially responsive records, the FBI identified several reasonable places to look. It reasonably concluded that information responsive to Plaintiff's four requests may well have been requested before, so it searched its index of responses to previous FOIA requests. (Hardy Decl. ¶¶ 33-34.) In addition, the FBI searched the particular case files identified by Plaintiff (by number) in his FOIA request. (*Id.* ¶ 35.) The FBI also searched its Laboratory's files. (*Id.* ¶ 36.) And the FBI also searched its index for cross-referenced information to see whether responsive records might

be found in other case files as well. (*Id.* ¶ 36.)

Second, the FBI used search methodologies reasonably designed to locate all responsive information. Specifically, the FBI used the names of the three murder victims, Mr. Echols' name, and the case file number supplied by Plaintiff in his requests, and it supplemented that by using the new file number of the investigative file identified by Plaintiff because that file had been renumbered. (*Id.*)

Third, the results of FBI's search jibe with common sense and there is no evidence of bad faith. The FBI located 190 pages that had been previously released and it re-processed those pages at Plaintiff's requests. (*Id.* ¶¶ 7 & 13.) The FBI located and processed a total of 697 pages, releasing 498 to Plaintiff, some with redactions. Plaintiff's requests included no information suggesting any wrong-doing by the FBI, either in the criminal investigation or in carrying out its searches in response to his FOIA requests. Therefore, the FBI enjoys a presumption of good faith in its searches.

For these reasons, the Court should uphold the FBI's search as reasonable.

## II.     FBI Properly Applied Exemptions 6 and 7(C).

Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The Court, therefore, must determine if the information qualifies as personnel, medical or similar file, and then, if so, whether "disclosure would compromise a substantial, as opposed to *de minimis*, privacy interest." *Consumers' Checkbook Ctr. for Study of Services v. HHS*, 554 F.3d 1046, 1050 (D.C. Cir. 2009). If the privacy interest is substantial, the Court must then balance the privacy interest against the public interest in disclosure. *Id.* The agency bears the burden of persuasion

regarding the balancing test.  *Id.*; *Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007) ("under Exemption 6 the presumption in favor of disclosure is as strong as can be found anywhere in [FOIA].").  That said, if there is no substantial public interest in disclosure of the information, "something, even a modest privacy interest, outweighs nothing every time."  *Consumers' Checkbook*, 554 F.3d at 1056.

Exemption 7(C) similarly protects individuals' privacy interests, and exempts from disclosure "records or information compiled for law enforcement purposes" when disclosure "could be reasonably expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Application of Exemption 7(C) similarly requires agencies to balance the privacy interests of individuals against the public interest in disclosure.  *Valdez v. Department of Justice*, 474 F. Supp.2d 128, 133 (D.D.C. 2007).  And as in Exemption 6 cases, where no public interest exists, any privacy interest - even a modest one - will prevail.  *See Beck v. Department of Justice*, 997 F.2d 1489, 1494 (D.C. Cir. 1993) (citation omitted).

As explained recently by the D.C. Circuit, Exemptions 6 and 7(C) are logically analyzed at the same time in requests for law enforcement information because both call for balancing the same interests, although the weighting is different:

> FOIA Exemptions 6 and 7(C) seek to protect the privacy of individuals identified in certain agency records.  Under Exemption 6, "personnel and medical files and similar files" may be withheld if disclosure "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Under Exemption 7(C), "records or information compiled for law enforcement purposes" may be withheld "to the extent that" disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C). . . . [B]ecause Exemption 7(C) permits withholding of such records if disclosure would constitute an "unwarranted" invasion of personal privacy, while Exemption 6 requires a " clearly unwarranted" invasion to justify nondisclosure, *Exemption 7(C) is more protective of privacy than Exemption 6" and thus establishes a lower bar for withholding material.*

*ACLU v. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) (emphasis added).

Before the FBI can apply Exemption 7(C),  it must first satisfy Exemption 7's

"threshold" requirement, because the various Exemption 7 bases:

> apply only to "records or information compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).  To show that the disputed documents were "compiled for law enforcement purposes," the FBI need only "establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law."

*Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011).  Here, as in both *Blackwell* and *ACLU*, the

FOIA requests themselves explicitly sought records relating to the FBI's assistance in a criminal

investigation.  The FBI's Hardy Declaration, ¶ 39,  explains that responsive records here were

compiled for law enforcement purposes.  "The FBI's assertion is entitled to deference."

*Blackwell*, 646 F.3d at 40.  Therefore, the FBI satisfies the threshold issue and the analysis

moves on to the balancing test under the "more protective" balancing in Exemption 7(C).

On the privacy side of the analysis, the FBI has identified the important privacy interests

of persons whose names or other identifying information appear in the responsive records, which

necessarily connects these persons to the FBI's criminal investigation regarding the West

Memphis Three.  Those persons fall into six categories:

- FBI Special Agents and support personnel,

- third parties of investigative interest,

- state or local law enforcement personnel**,**

- third parties merely mentioned,

- third party victims, and

- third parties who provided information to the FBI.

10

(Hardy Decl. ¶ 43 and accompanying chart.)

For each of these six categories, the Hardy Declaration explains the privacy interests at stake.  To summarize, law enforcement personnel have privacy interests in avoiding unwelcome publicity and potential harassment, as well avoiding the risk that exposure could undermine their effectiveness in future investigations.  *See generally* Hardy Declaration ¶¶ 49-51, and 53.  Non-victim third parties have distinct and weighty interests in avoiding public association of them with a particular criminal case (here, one that resulted in considerable media attention and notoriety) or with criminal investigations in general.  *See id.* ¶¶ 52, 54, and 56.  Third party victims also have strong privacy interests in avoiding further attention to the grisly details and images of the crimes here, and potentially continuation of the trauma to their surviving family members that disclosure of these records could reasonably cause.  *See, e.g., National Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004).  Individuals in each of these categories have strong privacy interests in information about them in responsive records, and the Court should find their privacy interests quite substantial and weighty.

On the public interest side of the balancing, Plaintiff has not identified any public interest to be served by the release of this information, and indeed, the names and identifying information about these third parties reveals nothing significant about what the government was up to.  Accordingly, the balance favors withholding the information.

**III.     FBI Properly Applied Exemption 7(D).**

Exemption 7(D) protects from disclosure records that "could reasonably be expected to disclose the identity of a confidential source" and the "information furnished" by such a source.  5 U.S.C. § 552(b)(7)(D).  To invoke Exemption 7(D) the agency bears the burden of proving that

the confidential source had either an express or implied assurance of confidentiality in providing

the information to the agency. *See generally Dep't of Justice v. Landano*, 508 U.S. 165, 171

(1993). In the absence of an express assurance of confidentiality, the FBI must "point to more

narrowly defined circumstances that ... support the inference" of confidentiality. *Id*. at 179. For

implied assurances:

> courts consider a number of factors to determine whether the source nonetheless "spoke
> with an understanding that the communication would remain confidential." [508 U.S.] at
> 172, 113 S. C. 2014. These factors include "the character of the crime at issue," "the
> source's relation to the crime," whether the source received payment, and whether the
> source has an "ongoing relationship" with the law enforcement agency and typically
> communicates with the agency "only at locations and under conditions which assure the
> contact will not be noticed." *Id*. at 179, 113 S. C. 2014 (internal quotation marks
> omitted).

*Roth v. Dep't of Justice*, 642 F.3d 1161, 1184-85 (D.C. Cir. 2011) (citing *Campbell v. Dep't of*

*Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998)). These factors are not an exhaustive list and the

agency may point to other relevant indicia in individual cases. *See Mays v. Drug Enforcement*

*Admin*., 234 F.3d 1324, 1328-29 (D.C. Cir. 2000). Even when the FBI contends that a source

received an express assurance of confidentiality, it must, in order to "permit meaningful judicial

review," present sufficient evidence that such an assurance was in fact given. *Roth*, 642 F.3d at

1184-85.

> Moreover, there is no balancing of interests in disclosure under Exemption 7(D):

> Unlike Exemptions 6 and 7(C), Exemption 7(D) requires no balancing of public and
> private interests. *See Parker v. Dep't of Justice*, 934 F.2d 375, 380 (D.C. Cir. 1991). If
> the FBI's production of criminal investigative records "could reasonably be expected to
> disclose the identity of a confidential source" or "information furnished by" such a
> source, that ends the matter, and the FBI is entitled to withhold the records under
> Exemption 7(D).

*Id.*

Here, the FBI relies on both express and implied assurances of confidentiality and its

coded *Vaughn* declaration further differentiates between five different categories of 7(D)

withholdings.  First, the FBI withheld confidential source information from 14 pages because the

information was provided under an express assurance of confidentiality.  (Hardy Decl. ¶¶ 61-62

& n.22.)  These pages reflect the express assurance by having been marked "PROTECT

IDENTITY" next to the withheld identifying information, consistent with the FBI's usual

practice of documenting such assurances in the investigative files themselves.  *Id*.  These

withholdings should be upheld.

The FBI also withheld the confidential source "symbol number" and "symbol file

number" for certain confidential source(s) from two pages of information.  (*Id*. ¶¶ 68 & 71 and

nn.28 & 29.)  These numbers and symbols are used by the FBI as a method of tracking the

identity of confidential sources who may be used more frequently (*id*. ¶ 66 ("on a regular

basis")) and so the files reflect the number of the source instead of his/her name (*id*.).  These

numbers are assigned only to further the confidentiality of information provided by a source to

whom FBI has given an express assurance of confidentiality.  (*Id*. ¶¶ 66 & 69.)  Disclosure of

these numbers would seriously undermine the FBI's ability to maintain the confidentiality of the

source(s) because, as explained in the Hardy Declaration, one release would mean the FBI would

have to release the numbers each time information was requested and repeated disclosures would

inevitably narrow the number of people who could be the sources and increases the possibility

that they will be  identified.  (*Id*. ¶¶ 67 & 70.)  This would seriously undermine the FBI's ability

to assure confidentiality to all its sources.  (*Id*. ¶¶ 68 & 71.)  The Court should uphold the FBI's

withholdings in categories 7(D)-1, 7(D)-4, and 7(D)-5 on the basis of express assurances of

confidentiality.

The FBI also withheld two categories of information on the basis of implied assurances of confidentiality -- 7(D)-2 and 7(D)-3.  (Hardy Decl. ¶¶ 63-65.)  In the withholdings marked 7(D)-2, local law enforcement officials provided information obtained from their sources to the FBI under circumstances where it is reasonable to conclude that they expected the FBI to treat the information as confidential and to honor the local law enforcement officials' concerns of the confidentiality of their sources (*id*. ¶ 63).  This claim of confidentiality is fully consistent with Exemption 7(D) and should be protected, in order to protect the ongoing relationship between the FBI and the local law enforcement, as well as the latter's commitment to protecting the confidentiality of its source(s).

As to the coded withholdings 7(D)-3, the Hardy Declaration describes the harm from releasing this information and the careful limiting the FBI did in its redactions.  (*Id*. ¶ 65.)  Further, the disclosed information surrounding these redactions supports the inference of implied assurances of confidentiality.  For example, the crime was particularly horrific, making it less likely that a source would want to be associated with the case.  Moreover, the source on page "Braga 345" and related pages explains that certain information may be "attributable to her" which strongly suggests a concern with remaining anonymous.  She further mentions a "repressed memory of an incident" (Braga-346) and "psychological counseling" (Braga-348) and these also suggest particular sensitivity and the need for confidential treatment of the information.  A second group of pages begins at Braga-411 and describes similarly sensitive information and "the children's parents did not proceed with criminal charges due to embarrassment and additional victimizing of the children. "  (Braga-412.)  Though its unclear

14

who the parents or children are in the reference, the sensitivity concern is similar and this information should be withheld as well.  Finally, the third group of pages begins at Braga-423 and the released information includes an explicit concern that the protected person "is afraid for her safety."  This alone suffices to support the inference of implied confidentiality in the source's identity.  For these reasons, the context in this case fully supports the FBI's withholding of information on the basis of implied assurances of confidentiality.  Therefore, the Court should uphold all of the FBI's Exemption 7(D) withholdings.

**IV.     FBI Adequately Identified and Released Segregable Information.**

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue *sua sponte*." *Trans-Pacific Policing Agreement v. U.S. Customs Service*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  FOIA requires that any "reasonably segregable" information must be disclosed after deletion of exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions."  5 U.S.C. § 552(b); *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements."  *Mead Data*, 566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed.  *Id.*  All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation

of disjointed words, phrases, or even sentences which taken separately or together have minimal

or no information content." *Mead Data*, 566 F.2d at 261, n.55.

Here, the extent of the FBI's redactions is explicit in the records it released with

redactions, all of which are attached to the Hardy Declaration, consistent with its use of a coded

*Vaughn* declaration.  The redactions are narrowly drawn and directly evidence a line-by-line

analysis of all records with redactions.  Further, the Hardy Declaration explains that the FBI

specifically and carefully reviewed the records to segregate and release non-exempt information.

(Hardy Decl. ¶¶ 72-73.)

## Conclusion

For these reasons, the FBI respectfully asks the Court to grant its motion for summary

judgment and enter judgment in Defendant's favor on all claims.


July 19, 2012                                         Respectfully submitted,

                                                     RONALD C. MACHEN JR., D.C. Bar #447889
                                                     United States Attorney
                                                     for the District of Columbia

                                                     DANIEL F. VAN HORN, D.C. Bar # 924092
                                                     Acting Civil Chief

                                                     By:   /s/
                                                     ALAN BURCH, D.C. Bar # 470655
                                                     Assistant United States Attorney
                                                     555 4th St., N.W.
                                                     Washington, D.C. 20530
                                                     (202) 514-7204, alan.burch@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                       )
STEPHEN L. BRAGA,                      )
                                       )
              Plaintiff,               )
                                       )
       v.                              )        Civil Action No.: 12-0139 (JEB)
                                       )
FEDERAL BUREAU OF INVESTIGATION,       )
                                       )
              Defendant.               )
_____)

## STATEMENT OF MATERIAL FACTS IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, the Federal Bureau of Investigation ("FBI"), respectfully submits this

Statement of Material Facts Not in Genuine Dispute in this case, pursuant to Local Civil Rules

7(h) and 56.1.  This case arises under the Freedom of Information Act ("FOIA").  FBI maintains

there are no genuine disputes of material fact and that the facts below entitle Defendant to

summary judgment.

1.     Responsive records were reasonably likely to maintained in any of the following FBI

       systems of records: (a) FOIPA Document Processing System; (b) the Little Rock Field

       Office's case file 252D-LR-34807, which was renumbered 62D-LR-34807; (c) the FBI's

       Central Records System; and/or (d) the FBI Laboratory.  (Hardy Decl. ¶¶ 27-37.)

2.     The FBI's searches of those systems were reasonably likely to locate all responsive

       records because they used as search terms the names of the victims of the crime, the

       name of Plaintiff's client, and the case file number identified by Plaintiff.  (*Id*. ¶¶ 34-37.)

3.     The FBI's coded *Vaughn* declaration explains each withholding in the case.  (*Id*. and Ex.

       T thereto.)

4.      The FBI withheld under Exemptions 6 and 7(C) the names and other identifying

information of third parties, law enforcement personnel, and confidential source(s).  (*Id*.

¶¶ 49-56.)  These individuals have weighty privacy interests in their identifying

information because of the potential for harassment, intimidation, harm to reputation, and

unwelcome attention that could likely result from publicly connecting them to the

criminal investigation of this high-visibility case.  (*Id*.)

5.      The names and identifying information withheld do not describe any governmental

activities that would be of any public interest.  (*Id*. ¶¶ 48-57.)

6.      The FBI withheld the names, identifying information, "source symbol number," and

"source symbol file number" for confidential source(s) in five separate categories.  (*Id*.

¶¶ 60-71.)  For three of these, marked 7(D)-1, 7(D)-4, and  7(D)-5 in the FBI's coded

*Vaughn* declaration, the FBI provided express assurances of confidentiality to the

sources.  (*Id*. ¶¶ 60-62, 66-71.)  For the other two categories, *i.e.*,  7(D)-2 and 7(D)-3, the

information was provided under an implied assurance of confidentiality as reflected by

the FBI's explanation (*id.* ¶¶ 63-65) and by the released information that surrounds the

redactions as seen in the pages of the coded *Vaughn* declaration (Braga-345-50, 411-14,

and 423-24).

7.      The FBI properly segregated non-exempt information as evidenced by its explanation of

its process of redaction (Hardy Decl. ¶¶ 72-73) and by the context of the redacted

information in the pages that were released with redactions (*id*. Ex. T).

July 19, 2012                            Respectfully submitted,

                                         RONALD C. MACHEN JR., D.C. Bar #447889
                                         United States Attorney
                                         for the District of Columbia

                                         DANIEL F. VAN HORN, D.C. Bar # 924092
                                         Acting Civil Chief

                                         By:   /s/
                                         ALAN BURCH, D.C. Bar # 470655
                                         Assistant United States Attorney
                                         555 4th St., N.W.
                                         Washington, D.C. 20530
                                         (202) 514-7204, alan.burch@usdoj.gov