UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEPHEN L. BRAGA,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>    Defendant. | Civil Action No.  12-139 (JEB) |

**MEMORANDUM OPINION**

In May 1993, three boys were murdered in West Memphis, Arkansas. Three men, subsequently knows as the "West Memphis Three," were ultimately convicted of the murders and sentenced to death or life in prison. Yet, after lengthy post-conviction proceedings, all were released from prison in 2011. The only one of the three initially sentenced to death was Damien Echols, who was represented in the collateral proceedings by Stephen L. Braga. Braga has brought this suit under the Freedom of Information Act, seeking documents from the Federal Bureau of Investigation related to the case. He contends that the 484 pages that were released, either in full or in part, are insufficient. Disagreeing, the FBI now moves for summary judgment. Because the Bureau's document search was adequate and because its withholdings were proper under FOIA Exemption 7(C), the Court will grant the Motion and enter judgment for Defendant.

**I.    Background**

Since March 2011, Plaintiff has submitted four FOIA requests to the FBI. See Compl., ¶¶ 12-30. Under the first and broadest, sent on March 17, Plaintiff sought

> copies of all records relating to the FBI's involvement with West
> Memphis, Arkansas in an investigation into the murders of three

> young boys named Steven Branch, Michael Moore and Christopher Byers on May 5, 1993. . . . [T]he FBI's Universal File Case Number for this matter was 252B-LR-34807. . . . The requested records include any FBI interactions with any other law enforcement or forensic agencies such as the Arkansas State Police and the Arkansas State Crime Laboratory concerning this investigation.

Id., ¶ 13. At the beginning of the first request, Plaintiff also advised Defendant that "the requested information is pertinent to certain issues to be addressed by the Arkansas Circuit Court at an evidentiary hearing later this year on Mr. Echols' motion for a new trial based on newly discovered evidence." Id. (brackets omitted). On March 24, the FBI responded to this request by (1) releasing 190 pages of information it had previously released to a prior FOIA requester; and (2) advising Plaintiff to resubmit his request should he want the documents to be reprocessed under the new Attorney General guidelines. See id., ¶ 14.

On April 4, Plaintiff sent a second FOIA request to the FBI, this time seeking "[a]ll records relating to communications to the FBI, or from the FBI, between January 1, 2000 and April 4, 2011 relating to FBI File Number 252B-LR-34807." Id., ¶ 19. In June, the FBI in response released 26 pages and withheld 25 pages under FOIA Exemptions 6, 7(C), and/or 7(D). See id., ¶ 20.

On May 11, Plaintiff submitted a third request, looking for "[a]ll records relating to the FBI's testing and/or analysis of soil, fiber, hair, blood, tissue, semen, clothing, polygraph examinations or other evidence in connection with . . . the Misskelley, Echols or Baldwin cases." Id., ¶ 23. Defendant responded that the 190 pages of information released on March 24 satisfied this request. Id., ¶ 24.

On June 24, Plaintiff sent his fourth and final request to Defendant. In this one, he asked the FBI to reprocess Plaintiff's first request under the new Attorney General guidelines, following Defendant's advice on March 24. See id., ¶ 27. In November, Defendant released to

Plaintiff 458 pages of information and withheld 239 pages under FOIA Exemptions 6, 7(C), and/or 7(D). See id., ¶ 28.

Plaintiff appealed each of the FBI's responses to his four FOIA requests. As to the first, the FBI offered further clarification of its reasons, but otherwise denied the appeal. See id., ¶ 18. The FBI affirmed its actions on Plaintiff's second request, but rejected any reliance on Exemption 7(D). See id., ¶ 22. The FBI also affirmed its action on the third request. See id., ¶ 26. As of the filing of the Complaint on January 27, 2012, the FBI had not decided Braga's December 7 appeal of the FBI's action on his fourth request. See id., ¶ 30. Because Plaintiff waited more than 20 days after this fourth appeal before filing suit, he exhausted his administrative remedies. See 5 U.S.C. § 552(a)(6).

In bringing this suit, Braga contends both that the FBI did not conduct an adequate search for responsive records and that certain records were improperly withheld. The FBI has now moved for summary judgment on both of these issues.

## II.   Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party

submits his own affidavits, declarations, or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In FOIA cases, the agency bears the ultimate burden of proof. See 5 U.S.C. § 552(a)(4)(B). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

**III.   Analysis**

Congress enacted FOIA in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with

published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary and capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times, courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

The Court must resolve three issues in ruling on Defendant's Motion for Summary Judgment. First, was the FBI's search for documents reasonable and adequate? Second, did the Bureau properly combine its application of FOIA Exemptions 6 and 7(C), and, if so, did it correctly balance the public and private interests at stake? Third, did the FBI correctly apply Exemption 7(D) in relation to implied assurances of confidentiality? The Court will address each in turn.

    A.  Search Scope and Methods

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). "[T]he issue to be resolved is not whether there might exist any other documents

possibly responsive to the request, but rather whether the <u>search</u> for those documents was <u>adequate</u>." <u>Weisberg v. Dep't of Justice</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original). The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." <u>Id.</u> To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." <u>Perry v. Block</u>, 684 F.2d 121, 127 (D.C. Cir. 1982). Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. <u>See id.</u> "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." <u>Truitt</u>, 897 F.2d at 542.

Attached to its Motion here, the FBI submitted the Declaration of David M. Hardy, Section Chief of the Record/Information Dissemination Service, which explains in detail, *inter alia*, the steps the Bureau took to search for responsive records. Hardy first describes the FBI's Central Records System (CRS) and how searches of CRS are conducted through its Automated Case Support System. <u>See</u> Hardy Decl., ¶¶ 27-32. He then discusses the manner in which searches responsive to Braga's requests were conducted. For example, Hardy states that the FBI "initially searched [the FOIPA Document Processing System] to determine whether [the Record/ Information Dissemination Section] had previously responded to similar requests about the [three] murders . . . ." <u>Id.</u>, ¶ 34. Indeed, "responsive material had been processed and released previously in 2007," and copies of those 190 pages were released to Braga. <u>Id.</u> The FBI also "physically obtained the file [from which the earlier records were produced] from the Little Rock Field Office" to search for records postdating 2007. <u>Id.</u>, ¶ 35. The Bureau, moreover, conducted additional searches of CRS for "cross-references responsive to plaintiff's request." <u>Id.</u>, ¶ 36.

The FBI also performed searches in the FBI Laboratory "because of plaintiff's specific references to records about forensic and scientific testing in his requests." Id.

Even though the FBI has located a total of 748 responsive pages, Braga contends that the above-detailed search was inadequate. In support, he argues that the Complaint appends responsive documents that were never produced; as a result, the search must not have been sufficiently thorough. See Opp. at 3. Plaintiff particularly seeks documents relating to forensic testing and suggests different terms the FBI might employ in conducting further searches.

There are two responses to Plaintiff's argument, one legal and one factual. As to the former, the test for adequacy is not whether every potentially responsive document was located; it is, instead, whether the methods employed in the search were appropriate. See Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.") (emphasis added). As just set out, the FBI's search was sufficiently thorough, even though it may not have located certain documents.

On the factual point – namely, whether the FBI could have located documents if it had used different search terms – the Bureau has now put that question to rest. Accompanying its Reply, Defendant has provided the Declaration of Dennis J. Argall, who is the Assistant Section Chief of the Record/Information Dissemination Service. See Argall Decl., ¶ 1. Argall avers that, in response to Plaintiff's arguments, the FBI Lab "conducted additional searches to determine whether it had any responsive records that were not located in the case file." Id., ¶ 6. He explains those searches in detail and states that they were unsuccessful. See id. The FBI also

conducted additional word searches using some of the terms suggested by Plaintiff and retrieved no documents.  See id., ¶ 7.[1]

The Court, therefore, finds summary judgment proper on the adequacy of the search.

B.  Exemptions 6 and 7(C)

Plaintiff next challenges the FBI's withholding of certain documents or portions of documents under FOIA Exemptions 6 and 7(C).  His main complaint is that the FBI has improperly consolidated its analysis under these two Exemptions:  "The analysis of these exemptions simply must be conducted separately in order to have any integrity and to effect the clear statutory differences between the two of them."  Opp. at 6.  Braga misunderstands FOIA law here.

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) excludes "records of information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Both provisions require agencies and reviewing courts to "balance the privacy interests that would be compromised by disclosure against the public interest in the release of the requested information."  Beck v. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting Davis v. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

Although both Exemptions require agencies and reviewing courts to undertake the same weighing of interests, the balance tilts more strongly toward nondisclosure in the context of

---

[1] The only possible exception concerns documents relating to FBI Inspector Gary Gitchell, as "it is the FBI's policy to neither confirm nor deny the existence of records indexed by third parties' names in the absence of privacy waivers or proofs of death, and where there is no overriding public interest, pursuant to FOIA Exemptions (b)(6) and (b)(7)(C)."  Id.  As explained in Section III.B, infra, such overriding interest does not exist here.

Exemption 7(C) because "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects." Reporters Comm., 489 U.S. at 756. First, Exemption 6 encompasses "clearly unwarranted" invasions of privacy, while Exemption 7(C) omits the adverb "clearly." See id. Second, Exemption 6 prevents disclosures that "would constitute" an invasion of privacy, while Exemption 7(C) targets disclosures that "could reasonably be expected to constitute" such an invasion. See id. Both differences are the result of specific amendments, reflecting Congress's conscious choice to provide greater protection to law-enforcement materials than to personnel, medical, and other similar files. See id. Courts have accordingly held that Exemption 7(C) "establishes a lower bar for withholding material" than Exemption 6. ACLU v. Dep't of Justice, 655 F.3d 1, 6 (D.C. Cir. 2011); see also Beck, 997 F.2d at 1491.

As a result, if the records and information the FBI seeks to withhold in this case were "compiled for law enforcement purposes," the Court need only address whether the agency has properly withheld these documents under Exemption 7(C). If so, there is no need to consider the higher bar of Exemption 6. Here, Braga never argues that the FBI records were not compiled for law-enforcement purposes. Nor would he have much luck doing so given that the records all concededly relate to the FBI's work on a murder investigation. See Hardy Decl., ¶ 39 (responsive records here compiled for law-enforcement purpose). This threshold question answered, the Court must now consider the privacy interests at stake in disclosure and the public interest in release.

The first step in the Exemption 7(C) analysis is to determine whether there is, in fact, a privacy interest in the materials sought. See ACLU, 655 F.3d at 6. In this context, the Supreme Court has rejected a "cramped notion of personal privacy" and emphasized that "privacy

9

encompass[es] the individual's control of information concerning his or her person." Reporters Comm., 489 U.S. at 763. To constitute a privacy interest under FOIA, the claimed interest must be "substantial." Multi Ag Media LLC v. USDA, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008); see also Roth v. Dep't of Justice, 642 F.3d 1161, 1174 (D.C. Cir. 2011). "[S]ubstantial," however, "means less than it might seem. A substantial privacy interest is anything greater than a *de minimis* privacy interest." Multi Ag Media, 515 F.3d at 1229-30.

The FBI here identifies the privacy interests of six categories of people "whose names or other identifying information appear in the responsive records," Mot. at 10: "FBI Special Agents and support personnel," "third parties of investigative interest," "state or local law enforcement personnel," "third parties merely mentioned," "third party victims," and "third parties who provided information to the FBI." Id. (citing Hardy Decl., ¶ 43 and accompanying chart). Hardy's Declaration spells out the different privacy interests involved with each group. See Hardy Decl., ¶¶ 49-57. The Court finds each of these interests substantial, a decision consistent with D.C. Circuit law. For example, "third parties who may be mentioned in investigatory files, as well as . . . witnesses and informants who provided information during the course of an investigation," have a privacy interest in the contents of law-enforcement records. Nation Magazine, Wash. Bureau v. Customs Serv., 71 F.3d 885, 894 (D.C. Cir. 1995); see also Kimberlin v. Dep't of Justice, 139 F.3d 944, 949 (D.C. Cir. 1998) ("It almost goes without saying, moreover, that individuals other than [the target of the investigation] whose names appear in the file retain a strong privacy interest in not being associated with an investigation involving professional misconduct . . . ."). Indeed, this interest is so strong that our Circuit has "adopted a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to

confirm or refute compelling evidence that the agency is engaged in illegal activity.'" Schrecker v. Dep't of Justice, 349 F.3d 657, 661 (D.C. Cir. 2003) (quoting SafeCard, 926 F.2d at 1206).

In response, Plaintiff argues only that a significant public interest exists in the potential exoneration of those sentenced to death. See Opp. at 7. He cites Roth, in which our Circuit did indeed hold that there is a substantial public interest in "knowing whether the FBI is withholding information that could help exonerate a potentially innocent death-row inmate." 642 F.3d at 1178. Here, in contrast, Echols is no longer a death-row inmate or a prisoner at all; he is now a free man. The public's interest, at this point, is diminished and cannot overcome the substantial privacy interests Roth itself outlines for "not only the targets of law-enforcement investigations, but also witnesses, informants, and investigating agents." Id. at 1174 (internal quotation marks and ellipsis omitted). The FBI, therefore, appropriately withheld the documents under Exemption 7(C).

C. Exemption 7(D)

Exemption 7(D) protects from disclosure "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation, information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). "A source is confidential within the meaning of exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (internal quotation

marks omitted). "[I]t is not enough for the [FBI] to claim that all sources providing information in the course of a criminal investigation do so on a confidential basis." Roth, 642 F.3d at 1184.

The analysis must be more searching. For example,

> [w]hen no express assurance of confidentiality exists, courts consider a number of factors to determine whether the source nonetheless spoke with an understanding that the communication would remain confidential. These factors include the character of the crime at issue, the source's relation to the crime, whether the source received payment, and whether the source has an ongoing relationship with the law enforcement agency and typically communicates with the agency only at locations and under conditions which assure the contact will not be noticed. Even when the FBI contends that a source received an express assurance of confidentiality, it must, in order to permit meaningful judicial review, present sufficient evidence that such an assurance was in fact given.

Id. (citations and internal quotation marks omitted). It is also important to note that, unlike Exemption 7(C), "Exemption 7(D) requires no balancing of public and private interests. If the FBI's production of criminal investigative records 'could reasonably be expected to disclose the identity of a confidential source' or 'information furnished by' such a source, that ends the matter, and the FBI is entitled to withhold the records under Exemption 7(D)." Id. at 1184-85 (citation omitted) (quoting 5 U.S.C. § 552(b)(7)(D)).

In this case the FBI relied on both express and implied assurances of confidentiality. Braga does not question the former. See Opp. at 8 n.2. In fact, in a conference call with the Court held on December 19, 2012, in which the Court sought clarification of the labeling of documents, Braga made clear that the only 7(D) documents he challenges are those mentioned in footnote 24 of the Hardy Declaration – namely, those pages numbered "Braga-334, 354-396, and 414-415." Hardy Decl. at 25 n.24. These are documents the FBI describes as "Information Provided by a Local Law Enforcement Agency Under an Implied Assurance of Confidentiality." Id. at 25.

12

As the parties also explained on the conference call, the Exemptions upon which the FBI relies for each paragraph in a document are set out in somewhat fainter type in the right-hand margin of each page next to the applicable paragraph. In addition, the "Braga-numbered" pages are noted, usually, in the bottom right corner of the page, and they do not correspond to the ECF page numbers. For example, the page labeled "Braga-334" in the lower right corner is ECF p. 396, and the first redacted paragraph contains the notations in the right margin "b6-4 b7c-4 b7D-2," which translates as the fourth category of Exemption 6, the fourth category of Exemption 7(C), and the second category of Exemption 7(D). The categories are described in the Hardy Declaration. See Hardy Decl. at 14 (chart). Where a document is withheld in its entirety, a cover sheet so indicates and marks the boxes next to the applicable Exemption(s). See, e.g., id. at ECF p. 421 (relating to Braga-391).

The Court has now reviewed each of the pages listed in footnote 24 of the Hardy Declaration or, when the pages were withheld in their entirety, the relevant FBI's cover sheet. Such review reveals that every single time the FBI invoked Exemption 7(D) in relation to these pages, it also invoked 7(C). Since the Court has already held that 7(C) applies here, its inquiry is at an end. There is no need to separately address 7(D)'s application.

Plaintiff also argues in his Opposition that a "VHS Crime Scene Video Tape" must be released because "the crime scene here was a public space." Opp. at 9 n.3. He relies on Cottone v. Reno, 193 F.3d 550 (D.C. Cir. 1999), for the proposition that "information in the public domain is usually not exempt from disclosure." Opp. at 9 n.3. Cottone concerned wiretaps, and the opinion said nothing about public space. It merely held that wiretapped recordings that were actually played in open court during a public criminal trial generally must be released. See 193

13

F.3d at 552. Here, on the contrary, there is no indication that the FBI has publicly released the videotape.

### D. Segregability

Although Plaintiff does not challenge the FBI's segregation of releasable from withheld material, the Court has a *sua spone* obligation to ensure that this has been done properly. See Trans-Pac. Policing Agreement v. Customs Serv., 177 F.3d 1022, 1028 (D.C. Cir. 1999) (instructing that district court has "an affirmative duty to consider the segregability issue *sua sponte*" if not otherwise raised by parties). It is, in fact, the Government's burden to demonstrate that no reasonably segregable material exists in the withheld documents. See Army Times Publ'g Co. v. Dep't of Air Force, 998 F.2d 1067, 1068 (D.C. Cir. 1993). The FBI must "provide[ ] a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks omitted); see also Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996) (determining government affidavits explained non-segregability of documents with "reasonable specificity"). "Reasonable specificity" can be established through a "combination of the Vaughn index and [agency] affidavits." Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002).

In this instance, the Court's review of the redacted documents, coupled with the Hardy Declaration, establishes that no segregability problem exists here. The documents have careful and pinpointed redactions of names, words, clauses, and sentences. This easily clears the required hurdle.

**IV.     Conclusion**

       For the foregoing reasons, the Court will issue a contemporaneous Order granting Defendant's Motion.

                                              */s/ James E. Boasberg*
                                              JAMES E. BOASBERG
                                              United States District Judge

Date:  December 21, 2012